George M. BROWN, Jr., et al.,
Plaintiffs in Error,

v.

A. R. STOUGH, Defendant in Error.

No. 36801.

Supreme Court of Oklahoma.

Jan. 10, 1956.

Arnote, Arnote & Bratton, McAlester, for plaintiffs in error.

Robert J. Bell, W. S. Horton and A. James Gordon, McAlester, for defendant in error.

WILLIAMS, Vice Chief Justice.

This action was instituted by a group of doctors and surgeons doing business as the McAlester Clinic, hereinafter referred to as plaintiffs, seeking to enjoin Dr. A. R. Stough, hereinafter referred to as defendant, from the practice of his profession as a physician and surgeon in Pittsburg County, Oklahoma, for a period of two years.

Plaintiffs' petition alleged that plaintiffs and defendant entered into a written partnership agreement on July 1, 1954, wherein it was provided, among other things, that in the event any member of the partnership should voluntarily withdraw or be dismissed from the partnership, such member should not practice medicine or surgery within the bounds of Pittsburg County, Oklahoma, for a period of two years from the date of his withdrawal; that defendant voluntarily withdrew from the partnership on August 31, 1954, and in violation of said agreement opened an office in the City of McAlester, Oklahoma, for the practice of medicine and surgery within the bounds of Pittsburg County, Oklahoma, and continues to so practice medicine and surgery in violation of said agreement.

Defendant answered admitting the existence of the partnership and the execution of the partnership agreement, denying that he voluntarily withdrew from the partnership, alleging that the withdrawal was involuntary and the result of a premeditated design to force his withdrawal on the part of two of the partners, alleging that the partnership agreement is contrary to public policy and void in its entirety, alleging that the restrictive clause in said agreement is void as being in violation of public policy and for lack of mutuality and consideration, and alleging that plaintiffs themselves have failed and refused to carry out the terms and conditions of the agreement and are therefore not entitled to maintain the action.

Plaintiffs replied by a general denial and upon the issues so formed the cause was tried to the court without the intervention of a jury.

The trial court, after making findings of fact and conclusions of law, rendered judgment for defendant denying the injunction sought, and plaintiffs appeal.

Plaintiffs contend, as their only assignment of error, that the judgment is not sustained by sufficient evidence and is contrary to law. Since the trial court's judgment was based on a conclusion that the contract in question is against public policy and therefore unenforceable, the question presented appears to be one of law rather than fact.

Contracts such as the one here involved do not seem to be particularly unusual. The reported opinions in cases involving such contracts are numerous and a great

many of them involve contracts between physicians. They have been uniformly upheld by the courts of the several states, where they have not been controlled by statutory provision, and equity has always granted relief by injunction to restrain a breach thereof. An excellent example of such case is Threlkeld v. Steward, 24 Okl. 403, 103 P. 630, 138 Am.St.Rep. 888, which involved a contract executed in Indian Territory prior to statehood, where the common law relating to contracts governed. But regardless of the common law or the rule in other states, we have a statute which governs such contracts in this state. 15 O.S.1951 § 217, provides:

"Every contract by which any one is restrained from exercising a lawful profession, trade or business of any kind, otherwise than as provided by the next two sections, is to that extent void. R.L.1910, 978."

15 O.S.1951 § 218, provides:

"One who sells the good-will of a business may agree with the buyer to refrain from carrying on a similar business within a specified county, city or part thereof, so long as the buyer, or any person deriving title to the good-will from him carries on a like business therein. R.L.1910, § 979."

15 O.S.1951 § 219, provides:

"Partners may, upon or in anticipation of a dissolution of the partnership, agree that none of them will carry on a similar business within the same city or town where the partnership business has been transacted, or within a specified part thereof. R.L. 1910, § 980."

The provision of the contract in question sought to be enforced here is as follows:

"It is specifically agreed by and between all the members of this partnership that in the event any partner shall voluntarily withdraw or be dismissed from the organization that such member shall not practice medicine or surgery within the bounds of Pittsburg County, State of Oklahoma, for a period of two years from the date of his withdrawal. This provision does not apply to any member retiring under Section Fourteen of this contract on account of age."

It is apparent that the above quoted provision of the contract is one by which one is restrained from exercising a lawful profession within the purview of 15 O.S.1951 § 217, supra, and therefore void unless it falls within one of the two exceptions allowed by 15 O.S.1951 §§ 218 and 219, supra.

Similar contractual provisions have been involved in a number of cases previously considered by this court and in every case the provision was upheld as being valid and enforceable and within the provisions of the statutory exceptions. See Wall v. Chapman, 84 Okl. 114, 202 P. 303; Key v. Perkins, 173 Okl. 99, 46 P.2d 530; Herrington v. Hackler, 181 Okl. 396, 74 P.2d 388; Clare v. Palmer, 201 Okl. 186, 203 P.2d 426; Moore v. Snodgress, 203 Okl. 572, 223 P.2d 1080; Griffin v. Hunt, Okl., 268 P.2d 874. The case of Herrington v. Hackler, supra, is more nearly analogous to the case at bar than any of the others cited. In that case plaintiff and defendant, who were both physicians, had entered into an agreement whereby plaintiff bought from defendant a hospital and equipment and plaintiff and defendant agreed to enter into a partnership for the general practice of medicine. The agreement provided that in the event the partnership should prove unsatisfactory or be dissolved, the defendant would repurchase the hospital from the plaintiff for the sum originally paid by him, or that defendant would refrain from the practice of his profession within a specified area for a period of five years. The partnership was later dissolved by mutual consent, but after dissolution defendant failed to repurchase the hospital and continued to practice medicine within the specified area. Plaintiff instituted an action to enjoin defendant from practicing medicine in violation of the agreement. In approving the granting of the injunction sought, this court used the following language [181 Okl. 396, 74 P.2d 391]:

"By express provision of section 9493 and 9494, O.S.1931 (15 Okl.St. Ann. §§ 218 and 219), one selling the

goodwill of a business may agree with the buyer not to engage in a similar business in a specified county, city, or part thereof, within a reasonable period of time.

"The defendant contends that the foregoing statutes are inapplicable for the reason that the contract in the present case contains no provision for the sale of the goodwill of defendant's business, and that such sale was not contemplated by the parties. We cannot agree with this contention. The rule is stated in 12 R.C.L. p. 985, as follows: 'Where a contract for the sale and transfer of a business omits to mention the goodwill, the presumption is that it was the intention of the parties that the goodwill should pass with the other assets. This necessarily results from the fact that the goodwill cannot exist except in connection with the business.'

"Adhering to this rule, this court, in the syllabus in Wall v. Chapman, 84 Okl. 114, 202 P. 303, held:

" 'Section 946, Rev.Laws 1910 (15 Okl.St.Ann. § 152) provides: A contract must be interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful.

" 'The obvious intent of a contract for the sale of all tools, furniture, and equipment of the office of a dentist to another dentist, coupled with an agreement by the seller not to enter into a like business in the same town for a period of five years, is to sell the good will of the business.'

"See Key et al. v. Perkins, 173 Okl. 99, 46 P.2d 530, and cases cited therein.

"The defendant contends further that the contract is void because it prohibits him from engaging in the practice of his profession to within 100 miles of Pryor; thus contravening the provisions of the statute. The fact that the parties took in too much territory does not render the agreement wholly void, but is only void to the extent that it prevents the seller from engaging in a like business beyond the confines of the county. Hartman v. Everett, 158 Okl. 29, 12 P.2d 543; McAvoy et al. v. Nelson Grain Co., 170 Okl. 180, 39 P.2d 47; Wesley et al. v. Chandler, 152 Okl. 22, 3 P.2d 720."

Prior to the execution of the contract here involved, defendant and four of the plaintiffs had been partners in the firm operating under a similar contract. The other three plaintiffs became additional partners by the execution of the contract in question. These three new partners each paid $1,000 in cash to each of the five old partners and each executed a note in the amount of $13,119.16 payable to the five old partners for the interest in the partnership thereby acquired. There was, therefore a sale of an interest in the firm by the defendant and four of the plaintiffs to the three other plaintiffs, and the contract in question was executed in carrying out such sale. The contract so executed contained provisions concerning the purchase by the remaining partners of the interest of any partner withdrawing or dismissed from the firm. Such provisions were applicable upon the withdrawal or separation of defendant from the firm, and he, in effect, sold his interest in the partnership to the remaining partners by withdrawing from the partnership. There were, therefore, two sales, so far as defendant is concerned, of an interest in the firm, and the covenant not to practice in case of withdrawal from the firm was a part of the consideration for both sales. That both sales included a sale of good will seems so obvious that discussion would seem unnecessary. We note in that connection, however, the following language found in 40 Am.Jur. 270, Partnership, § 200:

"The sale of a business will be presumed in the absence of any expression to the contrary in the agreement of sale, to pass the good will of the business with other assets. Applying this principle, it is generally held that a sale by a withdrawing partner of his interest in the partnership business and property to the other partners, who are to continue the business, in-

cludes the retiring partner's interest in the good will of the firm, even though no mention is made of the good will in the contract of sale, and the purchasing partner may prevent the selling partner or other person from using the good will of the old firm."

And in 36 Am.Jur. 539, Monopolies, Combinations, Etc., § 59, we find the following language:

"Inasmuch as a member of a partnership has an existing interest in the good will of the firm's business, an agreement not to engage in a competing business made by a retiring member of a firm who sells his interest to the remaining partner, stands on the same footing as a sale of the good will by a merchant or manufacturer."

See also 68 C.J.S., Partnership, § 248, p. 744; Herrington v. Hackler, supra; and Key v. Perkins, supra.

■ We conclude that the restrictive covenant in question falls within the purview of the exception provided by 15 O.S. 1951 § 218, supra, and is therefore not void and unenforceable.

Defendant suggests that the trial court's judgment that the contract is against public policy was not predicated upon the restrictive covenant not to practice medicine hereinabove discussed, but upon other provisions of the contract. A review of the findings of fact and conclusions of law made by the court indicates such to be at least partially the case. The court found that only paragraphs 7, 10 and 15 of the contract were necessary to the determination of the case. Paragraph 15 is the paragraph containing the covenant not to practice hereinabove set forth. Paragraph 7 of the contract provides in effect that differences of opinion and grievances between partners shall be determined by a majority vote of the partners and that if any member having a grievance refuses to submit to the majority decision he shall withdraw from the clinic and if he fails to do so he may be dismissed by the other partners. Paragraph 10 of the contract provides in effect that if a partner is guilty

of misconduct which in any way affects his practice or personal reputation, he will be given a hearing by the partnership and may be dismissed from the clinic by a majority vote of the partners.

The court found that by virtue of the above mentioned provisions of the contract, a partner could be tried by a majority of his associates, found guilty, and condemned either to refrain from his practice for a period of two years or else be required after years of service, to move to another county and attempt to build up a new practice, and concluded that as a matter of law such a contract was against public policy.

■ For the reasons hereinafter set forth, we are unable to agree with the court's judgment that the possibilities suggested would vitiate the entire contract.

If the paragraphs of the contract referred to by the court are void or contain provisions which are contrary to public policy, it does not necessarily follow that the contract is void or the restrictive covenant unenforceable. Only the offending paragraph or provision would be void and unenforceable, and the valid portions of the contract would be unaffected thereby. See Wesley v. Chandler, 152 Okl. 22, 3 P. 2d 720. We are cited no cases holding that provisions of the nature of those contained in paragraphs 7 and 10 of the contract are void or against public policy, but we do not find it necessary to decide such question here for the simple reason that it is in no way material to the case at bar. No contention is made by either side that defendant was dismissed under the provisions of paragraph 7 for failure to submit to the decision of the majority of the partners, nor is there any contention that defendant was dismissed for misconduct under the provisions of paragraph 10. The question of whether a partner could be validly dismissed under the provisions of either paragraph 7 or paragraph 10 and also thereafter restrained from practicing medicine under paragraph 15 is not presented by the record in this case and is specifically not decided by this court.

■ While defendant does not contend that he was dismissed from the firm and

concedes that he withdrew therefrom, he does contend that his withdrawal was not voluntary, but was involuntary and that the restrictive covenant in question only applies in the case of a voluntary withdrawal. We do not find such contention to be tenable under the record in this case, however. It is defendant's theory that his withdrawal was involuntary because, due to differences of opinion between defendant and some of the other partners and disagreement by defendant with some of the policies adopted by the firm and discourteous treatment of defendant by some of the other partners, conditions became so intolerable to defendant that he felt like he couldn't stand it any longer and that he felt like he had to get out of the partnership. We are of the opinion, however, that the conditions referred to by defendant merely constituted his reasons for withdrawing and did not render his withdrawal involuntary. No matter how good defendant's reasons for withdrawing might have been, the fact remains that the withdrawal was initiated by defendant himself, of his own volition, and that the other partners attempted to get him to change his mind and remain in the firm but he refused to do so. Under such circumstances we do not believe defendant's withdrawal could properly be termed other than voluntary. Particularly is such the case since the record reveals that defendant determined to withdraw from the partnership on the evening of the same day that he signed the partnership agreement. It is difficult to perceive how conditions could have deteriorated in a period of some ten hours to such an extent as to render defendant's situation intolerable and the record does not reflect any evidence of such deterioration.

We are of the opinion that the contract in question and the restrictive covenant therein are valid and enforceable and were entered into by defendant with full knowledge of the provisions thereof, for a valuable consideration, and that the court erred in refusing to enforce the same.

▉ Plaintiffs suggest in their reply brief that should they prevail herein, this court should fix the time that the injunction is to commence for its duration of two years as the time the mandate is spread of record. This we cannot do. The contract plainly provides that a member withdrawing shall not practice medicine for a period of *two years from the date of his withdrawal*. Plaintiffs' petition seeks injunctive relief in accordance with the provisions of the contract. They cannot now, by merely requesting the same in their reply brief in this court on appeal, obtain additional or greater relief than that prayed for in their petition or authorized by the contract sued upon.

The judgment of the trial court is reversed and the cause remanded with instructions to grant the injunction prayed for, such injunction to enjoin defendant from continuing the practice of medicine within Pittsburg County, Oklahoma, for a period of two years from August 31, 1954.

JOHNSON, C. J., and HALLEY, JACKSON and HUNT, JJ., concur.

WELCH, CORN and BLACKBIRD, JJ., dissent.